IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN THE MATTER OF M.D.M.R.,                    Case No. 6:23-cv-00232-WWB-DCI

DANHOE ALEJANDRO MEDINA LUGO,

    Petitioner,

v.

MARIA MILAGROS RAMIREZ PADILLA,

    Respondent.
_____/

# RESPONDENT'S TRIAL BRIEF

Pamela A. Padilla
Florida Bar No.: 688339
**Martinez Manglardi, P.A.**
903 N. Main Street
Kissimmee, FL 34744
Telephone: (407) 846-2240
Facsimile: (407) 847-2820
ppadilla@martinezmanglardi.com
vilmarie@martinezmanglardi.com
Attorney for Respondent


# **TABLE OF AUTHORITIES**

## **Cases**

*Alcala v. Hernandez,* 862 F. 3d 161 (4th Cir. 2016)

*Amdamaskal v. Amdamaskal, 2018 U.S. Dist. LEXIS 113940 (M.D. Minn. 2018)*

*Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005).

*Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1359 (11th Cir. 2020).

*Cunningham v. Cunningham*, 237 F. Supp. 3d 1246, 1277 (M.D. Fla. 2017)

*Fuentes-Rangel v. Woodman,* 617 Fed. Appx.920 (11th Cir. 2015)

*Golan v. Saada, 142 S. Ct. 1880 (2022)*

*In Re Robinson, 983 F. Supp. 1339 (D. Colo. 1997)*

*Padilla v. Troxell*, 850 F.3d 168, 176 (4th Cir. 2017).

*Pflucker v. Warms*, 2021 U.S. Dist. LEXIS 192766 at 30 (M.D. Fla. 2021).

*Lozano v. Alvarez*, 572 U.S. 1 (2014)

*Luis Alfonso V.H. v. Benessa Cristina A.Z.,*

*Romero v. Bahamonde*, 857 Fed. Appx. 576 (11th Cir. 2021).

*Wojcik v. Wojcik, 959 F. Supp. 413 (E.D. Mich. 1997)*

## **TREATIES AND STATUTES**

*The Hague Convention and International Child Abduction Convention Act*, 42 U.S.C. Section 11601; and 42 U.S.C. Section 1160

## INTRODUCTION

On February 9, 2023, Petitioner, DANHOE ALEJANDRO MEDINA LUGO, filed a Verified Complaint and Petition for Return of a Minor Child to Venezuela and Warrant of Arrest in Leiu (sic) of Writ of Habeous (sic) Corpus seeking the return of his minor child, M.D.M.R., pursuant to the Hague Convention on the Civil Aspects of International Child Abduction Act ("the Hague Convention" and/or "ICARA") claiming that his minor child, M.D.M.R. was wrongfully removed to the United States from his habitual residence in Venezuela by the Respondent.

The Respondent denies that the removal of the minor child was "wrongful" because the Petitioner was aware, was in agreement and acquiesced to the minor child's relocation to the United States such that removal should be denied. Article 13 (a) of the Hague Convention provides that a court can deny removal if it is found that the Petitioner "**had consented to or subsequently acquiesced in the removal or retention**". The evidence in this case will be that the Petitioner was aware of the intent to relocate to the United States, consented to the relocation and acquiesced to the relocation such that removal should be denied without further assessment.

Even if this Court is inclined to believe the removal was wrongful, the Court should consider Respondent's two (2) affirmative defenses; namely the defenses set forth in Article 12 ("well-settled" defense) and Article 13 ("grave risk" defense) of the Hague Convention. Respondent contends that the evidence will support that the child is now "well settled" and thriving in this new environment such that removal should be denied. Further, Respondent will prove that, pursuant to Article 13(b), there is a "grave risk" that

the child's return would expose him or her to physical or psychological harm or otherwise place the child in an intolerable situation such that removal should be denied.

## FACTUAL BACKGROUND

The parties were married on October 15, 2015, in Venezuela where they resided as husband and wife. On February 7, 2017, the only son of the marriage, M.D.M.R., was born. When the parties separated in April of 2018, the Respondent remained in the marital residence with the minor child while the Petitioner moved into his parent's home. There was a great deal of contention between the parties during their separation.

On September 28, 2018, the Venezuelan court dissolved the marriage and granted the Respondent custody of the minor child. Pursuant to the parties divorce decree Venezuelan Court ordered as follows:

> **Regarding the Custody of the child M.D.M.R.(sic)**, born on February 7, 2017, one (01) year old, **he will live with his mother**, the citizen MARIA MILAGROS RAMIREZ PADILLA, Venezuelan, of legal age, of the identity card No. V-20,700409, in this sense, **this Court rules that Custody will be exercised by the mother and must notify the other parent in advance in the event that he (sic-"she) decides to change residence**, for the purposes that he may fully exercise their rights and duties in relations to their child.

Subsequent to the entry of the divorce decree, an Order of Visitation was entered by the Venezuelan Court that provided the Petitioner with parental and visitation rights. It is undisputed that Respondent has had physical custody of the minor child since his birth. It is also undisputed that the Petitioner exercised visitation rights with his son.

On August 20, 2021, the Respondent married Julio Navarro Sanchez, her current husband.

On or about August 27, 2021, there was a home invasion at the Respondent's mother's home while Respondent and her husband were present. Several government officials entered the home with masks and handcuffed them, all the while making death threats to them for opposing the Maduro/government regime. After this threat and other prior threats, the Respondent and her husband discussed fleeing to the United States for their safety and that of the minor child.

It is <u>undisputed</u> that the Respondent discussed a relocation from Venezuela to the United States in September of 2021 with the Petitioner. Petitioner expressed no objection to the move. Respondent contends that Petitioner agreed that their son's future would be safer and better in the United States. Respondent claims that the Petitioner expressed a desire to get his passport so he could come to the U.S. but said that he did not have the funds to do so. The parties agreed that the Respondent would come first and, after getting settled, would financially help Petitioner get his passport. During said meeting, the Petitioner inquired about how they would enter the United States to which the Respondent's current husband advised that he had been in contact with someone who could guide them into the United States. Respondent disputes the version of facts set forth by Petitioner in his verified Petition as to the discussion.

It is <u>undisputed</u> by the Petitioner that over the course of the following two (2) months, Respondent and her current husband sold all of their belongings in preparation for their move to the United States. In fact, Petitioner and his family attended the Respondent's garage sale wherein Respondent again advised that she was selling everything for her upcoming move to the United States. It is also <u>undisputed</u> that

Petitioner was also aware that the Respondent then rented out her residence and moved into her mother's home before leaving for the United States.

It is undisputed that the Petitioner was not aware of the exact date of the relocation. On or about November 17, 2021, the Respondent, minor child and her current husband, traveled from Venezuela to Colombia. Over the course of the following four days, Respondent, along with minor child and current husband, flew from Cucata, Colombia to Bogota, Colombia. They then flew to Mexico City, Mexico where they then boarded the final flight to Mexicali, Mexico. Upon arrival in Mexicali on November 21, 2021, they were driven via taxi to the border of Mexico and the United States which took approximately 30-45 minutes. Upon arrival at the border, the Respondent, the minor child and Respondent's husband, walked approximately 25-50 feet where they walked into the United States without incident. The Respondent denies all of the Petitioner's attempts in his Verified Petition to paint the Respondent in a poor light before this Court by alleging that Respondent traveled with the minor child under the cover of night, with coyotes and violent criminals, exposing the child to all sorts of diseases, and making him cross a river. Respondent further denies Petitioner's claims that the minor child was emotionally traumatized by the travel.

On November 30, 2021, the Respondent contacted the Petitioner via WhatsApp as follows:

> Hello Danhoe. Good evening, how are you? Thank God M.D.M.R. and I are very well, we are safe and sound. Full of great health, safer than ever, thank God, because he is miraculous. I am writing to tell you that everything is fine, I think it was the best decision we made between father and mother of M.D.M.R. I am very grateful to you with all my heart that neither your mother Ollyvice nor you Danhoe

6

>make things more difficult than they already are Danhoe, I have been through a lot from you, please do not hurt M.D.M.R. or me anymore. Think about your son's future, when you want to see him, he will be right here for you. Good Night."

Although the Petitioner now denies that he gave permission for relocation, the parties' communication improved and the communication was regular and cordial. Over the course of the following nine (9) months the Petitioner and his son communicated primarily through Instagram Messaging which allows for audio calls, video calls, audio messages and the exchange of photographs.

The cordial communication continued until approximately August of 2022 when during a video call between the Petitioner and his son, the Petitioner told M.D.M.R. that this mother is a whore, evil and had kidnapped him. As a result M.D.M.R. became very upset, denied Petitioner's description of his mother and told his dad that he did not want to go back to Venezuela because they never have electricity or food. After the call, the minor child was very upset with his father and no longer wanted to speak with him. Soon thereafter, Petitioner started a social media campaign against the Respondent. Petitioner posted on Instagram a photo of M.D.M.R. with text stating that his mother kidnapped him. This Instagram post went on to be reposted by Petitioner's friends and family and resulted in threatening messages to Respondent. As a result, the communication between the parties deteriorated and five (5) months later the Petitioner filed this action.

## **LAW AND ANALYSIS**

This action has been filed pursuant to The Hague Convention and International Child Abduction Convention Act ("ICARA") set forth in #28. Convention on the Civil Aspects of International Child Abduction, 42 U.S.C. Section 11601; and 42 U.S.C. Section

7

11603 ("Hague").  The Hague Convention sets forth the framework for a court to address allegations that a child was wrongfully removed from his/her habitual residence from a parent who had parental rights.  The Respondent in this case does not deny that the habitual residence of the minor child at issue was Venezuela nor does she deny that the Petitioner has certain rights as a parent of the minor child. Therefore, the first issue for this Court to decide is whether the Petitioner has proven by the preponderance of the evidence that removal was "wrongful" and that he did not consent and/or subsequently acquiesce to the child's removal.

## FIRST AFFIRMATIVE DEFENSE
## PETITIONER CONSENTED AND ACQUIESCED TO REMOVAL
## AND RETENTION OF THE CHILD

Even when a petitioner has established a wrongful removal, a court is not bound to order the return of a child where the respondent demonstrates by a preponderance of the evidence that the petitioner consented to or subsequently acquiesced in the removal. Article 139a); 22 U.S.C. § 9003 (e)(2)(B); see also *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1359 (11th Cir. 2020).

Consent refers to the petitioner's conduct before the wrongful retention or removal. *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005). However, the petitioner's conduct after the wrongful retention may further indicate whether she consented to it. *Padilla v. Troxell*, 850 F.3d 168, 176 (4th Cir. 2017) (citing *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001)).

Under the Hague Convention, acquiescence includes a consistent attitude of acquiescence over a significant period. *Pflucker v. Warms*, 2021 U.S. Dist. LEXIS 192766 at 30 (M.D. Fla. 2021). When the facts showing acquiescence are ambiguous, courts look

8

to the intent of the parent who is said to have acquiesced. *Cunningham v. Cunningham*, 237 F. Supp. 3d 1246, 1277 (M.D. Fla. 2017) (citing Baxter, 423 F.3d at 371).

In assessing whether the child was wrongfully removed, the Court should assess whether the Petitioner consented or subsequently acquiesced to the removal or retention in the United States. *See,* Article 13(a) the Hague Convention. In this case, the Petitioner concedes that

> *"from the month of September of two thousand twenty one (2021), the parent (Respondent) began to tell me that she wanted to leave the country, and therefore take the child out of Venezuela, according to her from a country that has no future, I told her that if that was her wish, she should first plan and organize a life project, according to a good parent of a family…."* See Husband's narrative.

Respondent disputes Petitioner's version of the discussion. Respondent asserts that Petitioner agreed that M.D.M.R. could move to the United States and, in fact, advised that he planned to get his passport to come as well. Petitioner advised that he needed to renew his passport but did not have the money at the time and would follow once he could. Respondent agreed to come first with the son and help the Petitioner financially upon arrival so that he could get his passport to come. This is supported by the Respondent's text to Petitioner on December 3, 2021 stating:

> "I am willing to follow our plans as we had them, to help you get your passport, but I don't want you to disrespect me again, that's the only thing I'm telling you Danhoe"

Over the course of the next two (2) months, Respondent openly took steps to effectuate the move by renting out her home, selling all of her belongings and staying in her mother's home pending the departure. It is clear that Petitioner was fully aware of the

relocation plan prior to removal and at no point objected until after the Respondent left Venezuela.

It was not until after the minor child and Respondent came to the United States, that he first denied giving consent. However, after a short time frame, Petitioner acquiesced to the minor child living in the United States. Respondent will show that the Petitioner's actions and inactions both prior to the removal of the minor child and over the course of the past fifteen months demonstrate that he consented to removal initially, retracted it after removal and then subsequently acquiesced to child's retention in the United States.

### SECOND AFFIRMATIVE DEFENSE-ARTICLE 12-"WELL SETTLED" DEFENSE

Article 12 of the Hague Convention provides that if a petition for the removal of a child is filed more than one year after removal, the Court should not order the return of the child if the child is "well settled" in his new environment. Respondent carries the burden of providing that the child is "well settled" by a preponderance of the evidence. The Hague Convention and ICARA are silent as to the facts a court should consider in making a "well-settled" determination. However, the Courts have held that a court should consider any relevant circumstance surrounding the child's living environment, stability of the child's residence in her new environment; social ties with family and friends and attendance at school and other social institutions such as religious institutions. See Lozano v. Alvarez, 572 U.S. 1 (2014); *see also Romero v. Bahamonde*, 857 Fed. Appx. 576 (11th Cir. 2021). In *Luis Alfonso V.H. v. Benessa Cristina A.Z.,* the Court analyzed the intent of the Hague drafters in allowing for a well settled defense:

> Even so, Article 12 represents "the conviction of the drafters that even if a wrongful removal has occurred, **it might be worse to order the child to**

> **be uprooted again** after a certain amount of time.  Belay, 272 F. Supp. 2d at 562 (emphasis in original)  After the passage of a year, it becomes "**a reasonable possibility that the child could be harmed by….removal from an environment into which the child has become settled**," and a "court ought to be allowed to consider this factor in making a decision whether to order the child's return.

512 F. Supp. 3d 633, 646 (W.D. V.A. 2021)

As the years have passed the courts have outlined different factors that the Court may consider in determining whether a child is "well settled".  The different factors that courts have considered include 1) the age of the child; 2) the stability of the child's new residence; 3) whether the child attends school or daycare consistently; 4) whether the child attends church regularly; 5) the stability of the parent's employment or other means of support; 6) whether the child has friends and relatives in the area; 7) the extent the child has maintained ties to the country of habitual residence; (8) the level of parental involvement in the child's life.  See, e.g. *Fuentes-Rangel v. Woodman,* 617 Fed. Appx.920 (11th Cir. 2015); *Alcala v. Hernandez,* 862 F. 3d 161 (4th Cir. 2016)

The Respondent has the burden of proving by the preponderance of the evidence that the child is "well settled" and intends to offer evidence regarding the following factors.

**Age of the Child**

Under this factor, Courts consider whether the child is old enough to form meaningful connections with the community.  *See In re Robinson  983 F. Supp. 1339, 1346 (D. Colo. 1997).*  In this case, the minor child is 6 years old.  He is not an infant or toddler who is unsophisticated and oblivious to his surroundings. The evidence will show that the minor child has strong connections with our local community. He has learned English, excels in school, and has formed special bonds with family, friends, and

teachers. This factor weighs in favor of the Court finding that he is well settled within the community.

**Stability of the Child's New Residence**

Upon arrival in the United States, the minor child, Respondent, her husband, and the minor child's maternal grandmother have lived in Sanford, Florida. They currently live in a 3 bedroom/ 2 bathroom apartment at Westlake Luxury Apartment Homes. The community has two swimming pools, multiple tennis courts, a clubhouse, a gym and other amenities. The evidence will show that the Respondent's name is on the lease of the apartment and that rent has never been paid late.

**Whether the Child Attends School or Daycare Consistently**

The evidence will show that the Respondent enrolled the minor child at Pine Crest Elementary School's voluntary prekindergarten (VPK) program in December of 2021 within weeks upon arrival in Florida. Although he did not initially speak English, he soon became fluent such that he did not qualify for ESOL classes. The minor child successfully completed the VPK program on May 20, 2022. In August of 2022, M.D.M.R. then started kindergarten at the same school, Pine Crest Elementary, where he continues today. The evidence will show that that the minor child has consistently attended school, has excelled at school, loves school, has friends at school, engages in school and, in fact, has been selected to be tested for the gifted program. This factor weighs in favor of finding that the minor child is well settled.

**Whether the Child Attends Church Regularly**

As further evidence that the minor child is well settled, Respondent will show that the minor child and Respondent are members of All Souls Catholic Church in

Sanford. The evidence will show that the minor child attends the church on a regular basis, and has become part of the church community. This factor also weighs in favor of finding that the minor child is well settled.

**Stability of the Parents' Employment or Other Means of Support**

The Respondent has primarily been a stay at home mother to her minor child since her arrival. The evidence will further show that the Respondent's husband earns a sufficient income to maintain the family home. Additionally, the Respondent's mother, who resides with the Respondent, contributes to the maintenance of the household. Additionally, Respondent and M.D.M.R. have many family members who reside in the community who could provide support in an emergency. M.D.M.R has not lacked for food, shelter, medical care, health insurance, entertainment, school supplies, or any other necessity since his arrival.

**Whether the Child Has Friends and Relatives in the Area**

The evidence will show that Matias has extensive family in the area and friends. Matias has a great deal of maternal family in the area who he sees on a regular basis. M.D.M.R. has developed friendships through his school as well as friends in the neighborhood.

M.D.M.R. has celebrated two birthdays since his arrival with friends and family.

M.D.M.R. spent Easter at Church with family. He has also celebrated two Thanksgiving and Christmas holidays here with extensive family.

The evidence will be that not only does M.D.M.R. have maternal family in the area, the Petitioner also has family ties to the area. M.D.M.R. has interacted with Petitioner's

13

family in the community including attending family social events like the Orlando wedding of Petitioner's cousin.

**The Level of Parental Involvement in the Childs Life**

The Respondent has been the primary caregiver to the parties' minor child since giving birth to him on February 7, 2017. He has never resided or been away from his mother until he was removed by the U.S. Marshall's on February 10, 2023. The minor child has never resided with the Petitioner, who lives in his parent's home with his girlfriend. M.D.M.R. is well settled in his life with his mother, because that is the only life that he has ever known.

**Medical Care**

The Respondent will show that the minor child has health insurance and has received his immunizations, vaccines and check-ups with his pediatrician, Dr. Javier Miller, since arriving.

**PETITIONER'S DEFENSE TO WELL SETTLED**

A. Equitable Tolling

Respondent anticipates that the Petitioner will attempt to contest the well-settled defense claiming that Respondent concealed her whereabouts such that he could not timely file a Petition within the United States. Consequently, the one year time period before the "well settled" defense becomes applicable should be equitably tolled until Petitioner was able to locate M.D.M.R.'s whereabouts. Even if there were facts to support this allegation, however, equitable tolling is not available under the Hague convention. *See Lozano v. Alvarez*, 572, U.S. 1, 4 (2013) (holding that equitable tolling does not apply

in a Hague case even if the allegedly abducting parent was actively concealing the whereabouts of the minor child).

Besides having no legal support, the evidence will show that Petitioner knew and acquiesced to Respondent's removal of M.D.M.R. as early as September of 2021. There will also be evidence that Petitioner was aware of M.D.M.R.'s location on January 24, 2022 and had his exact address as of May 16, 2022.

B. Petitioner's Actions in Venezuela Constituted "Commencement"

A Petition has to be commenced within one year of a child's removal for the well settled defense to not be applicable. *See Article* 12, Hague Convention. Proceedings in other courts or with other authorities do not count as commencement for purposes of the Hague Convention. *See Wojcik v. Wojcik, 959 F. Supp. 413, 418 (E.D. Mich. 1997). (holding that commencement* of a proceeding does not occur until a civil action is filed in a United States Court); *see also 22 USCS § 9003* (*any person seeking to initiate proceedings under ICARA must commence a civil action in a court having jurisdiction*). Consequently, any actions taken by Petitioner in any court outside of this one do not count as "commencement" for purposes of the "well settled" defense.

It is absolutely clear that M.D.M.R. is well settled in our community and that no defenses apply. Indeed, the other courts have found similarly situated children to be well settled and denied petitions on that basis. In a similar case, *Amdamaskal v. Amdamaskal*, 2018 U.S. Dist. LEXIS 113940; (M.D. Minn. 2018), the Court found that a six year old child well settled such that it denied a Petition for return even when the petitioner was alleging concealment of the child by the respondent. *Id* at 11. The Court noted that the child was old enough to form ties to the community. *Id.* The Court also found that the child

was enrolled in school, thriving in the classroom, fluent in English, and engaged in community activities including with friends and with the local religious community. *Id.*

### THIRD AFFIRMATIVE DEFENSE-GRAVE RISK DEFENSE

A Petition under the Hague convention should not be granted if the return of the child would result in a grave risk of harm. *Golan v. Saada*, 142 S. Ct. 1880, 1889 (2022). Respondent has the burden of proving the minor child would face harm by clear and convincing evidence. *Id.* The Respondent asserts that the evidence will show that removal of the minor son from his mother's custody would cause psychological trauma to the minor child as he has only lived with his mother since his birth. Removal would mean that the mother would never be able to visit the minor child since she cannot return to Venezuela. The removal would deny the minor child from any physical contact with her son ever. Whereas if the minor child remained in the United States, the Petitioner would be able to physically visit his son here without issue since he has a passport and VISA and is able to travel. Removing the minor child clearly places him in an intolerable situation as he would be denied a relationship with his mother, the only parent who has had custody of him since his birth.

### CONCLUSION

The Petition should be denied. Petitioner initially consented to the removal and took no action to commence this proceeding until well M.D.M.R. had resided in Florida for fifteen months. Petitioners delay in commencing this proceeding and actions taken during that delay indicate an acquiescence to M.D.M.R. remaining in Florida. If the Court finds that Petitioner has now revoked his prior acquiescence to M.D.M.R. remaining in

Florida, the Petition should still be denied because M.D.M.R. is well settled in our local community and removing him would cause him harm.

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of March, 2023, a copy hereof has been furnished to Carmelina Marin Esq, counsel for Petitioner 6900 Tavistock Lakes Boulevard, Ste. # 400 Orlando, Florida 32827 at the following email address: contact@themarinlawfirm.com.

/s/ Pamela A. Padilla
Pamela A. Padilla
Florida Bar No.: 688339
Martinez Manglardi, P.A.
903 N. Main Street
Kissimmee, FL 34744
Telephone: (407) 846-2240
Facsimile: (407) 847-2820
ppadilla@martinezmanglardi.com
vilmarie@martinezmanglardi.com
Attorney for Respondent